UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DIRK REGAN, et al.,

      Plaintiffs,

  v.

WILLIAMS COMMUNICATIONS, INC., et al.

      Defendants.

-------------------------------

DIRK REGAN, et al.,

      Plaintiffs,

  v.

QWEST COMMUNICATIONS INTERNATIONAL, INC., et al.,

      Defendants.

NO. CIV. S-01-0779 WBS JFM
      S-01-0766 WBS JFM

<u>MEMORANDUM AND ORDER</u>
<u>RE: MOTION TO RECONSIDER</u>

----oo0oo----

     Named plaintiffs Dirk Regan, Carol Regan, and Jacquelyn Sheldrick have filed two putative class actions in this court. In Civ. S-01-766, defendants are Qwest Communications International, Inc., Qwest Communications Corporation, Qwest Transmission, Inc., Qwest USLD Communications Corporation, and

1

1 Qwest Network Construction Services (collectively, "Qwest").  In
2 Civ. S-01-779, defendants are Williams Companies, Inc., Williams
3 Holdings of Delaware, Inc., Williams Communications Group, Inc.,
4 Williams Communications LLC and Williams Communications, Inc.
5 (collectively, "Williams").  These cases arise out of plaintiffs'
6 allegation that Qwest and Williams wrongfully installed and
7 operated fiber-optic cables on plaintiffs' property.  Plaintiffs
8 now move for reconsideration of the court's order of May 16, 2003
9 denying class certification.

10 I. Factual and Procedural History

11          The Regans and Ms. Sheldrick are the owners in fee
12 simple of 2.9 and 2.0 acres of land, respectively, in Placer
13 County.  They each allege that a railroad right-of-way belonging
14 to the Union Pacific Railroad ("Union Pacific") runs across a
15 portion of their land.  Plaintiffs contend that this right-of-way
16 is an easement given to the Central Pacific Railway Company
17 (Union Pacific's predecessor-in-interest) by a July 1, 1862 Act
18 of Congress.  Plaintiffs further contend that this right-of-way
19 easement is limited to railroad-related purposes only, and that
20 the underlying land remains within the ownership of plaintiffs
21 for all nonrailroad-related purposes.

22          Beginning in the 1990s, Qwest and Williams began
23 constructing fiber-optic telecommunications system networks
24 throughout the country, including California, installing cable
25 beneath Union Pacific's right-of-way.  Plaintiffs filed the class
26 action against Qwest on April 20, 2001 and the class action
27 against Williams on April 24, 2001, alleging that defendants
28 installed fiber-optic cable on plaintiffs' land without their

2

consent, that such cable installation went beyond the scope of the railroad's easement, and that defendants' operation of fiber-optic cable on plaintiffs' land therefore constitutes trespass.

Plaintiffs moved to certify the following class: "all owners of land in California that underlies or is adjacent to a railroad right-of-way within which defendants operate or use fiber-optic cable." In an order dated May 16, 2003, the court denied plaintiffs' certification motion. The court determined that the "typicality" requirement of Federal Rule of Civil Procedure 23(a) ("Rule 23(a)") was not met. Plaintiffs' title history is unique, and "a named plaintiff's motion for certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." (May 2003 Order at 4)(quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)). Plaintiffs moved for reconsideration on June 2, 2003.

Meanwhile, a settlement agreement was being negotiated in the Northern District of Illinois between telecommunications companies and a putative class consisting of "landowners whose property is subject to railroad rights of way, along which defendant telecommunications companies have installed fiber-optic cables without the landowners' permission." See Smith v. Sprint Communications Co., L.P., 387 F.3d 612, 613 (7th Cir. 2004)(reviewing settlement agreement). Before this court was able to hear the motion for reconsideration, the court in the Northern District of Illinois approved the settlement agreement and, further, enjoined the present putative class actions, among

3

others, from proceeding further. <u>Smith v. Sprint Communications Co. L.P.</u>, No. 99 C 3844, slip op. at 3, 5 (N.D. Ill. July 31, 2003).

The Seventh Circuit vacated the district court's class certification and effectively dissolved the injunction on this court by its decision that issued October 19, 2004. <u>Smith</u>, 387 F.3d 612. <u>Smith</u> noted that the class at issue had been certified "for settlement only, which the settling parties insist eliminates the complications that made the class uncertifiable in <u>Isaacs</u>." <u>Id.</u> at 613.[1] <u>Smith</u> found that the settlement class was wrongly certified because the settling plaintiffs did not adequately represent all of the class, thus not meeting the requirement of Rule 23(a)(4). <u>Id.</u> at 614. The landowners in Tennessee and Kansas, included in the proposed settlement class, were on the eve of trial in their own state courts, and the Tennessee landowners had a chance to recover much more than the settlement would have permitted. <u>Id.</u>

This court lifted the stay on these cases on March 4, 2005.

II. <u>Discussion</u>

"An order under Rule 23(c)(1) [certifying or denying certification of a class] may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Motions for reconsideration of interlocutory orders, like the order in this

---

[1] <u>Isaacs v. Sprint Corp.</u> was a case involving a "virtually identical class." <u>Smith</u>, 387 F.3d at 613; <u>Isaacs</u>, 261 F.3d 679 (7th Cir. 2001). The Seventh Circuit in <u>Isaacs</u> vacated the certification of that class, labeling the case "a nightmare of a class action" due to the "intricate legal and factual issues" involved. 261 F.3d 679, 682.

4

case denying class certification, are governed by Local Rule 78-230(k).  Among other requirements, the party seeking reconsideration must show "what new or different facts or circumstances are claimed to exist . . . or what other grounds exist for the motion."  The moving party must also show "why the facts or circumstances were not shown at the time of the prior motion."

Plaintiffs give two reasons why the court should reconsider its order denying class certification.  First, they argue that "when a class action defendant supports certification of a settlement class, it is judicially estopped from later contesting that the requirements of certification have been met." (Pls.' Mem. in Supp. of Mot. for Reconsideration at 6). Plaintiffs point out that defendants supported certifying a plaintiff class in the Northern District of Illinois that would have included all of the class members in this case.  Therefore, plaintiffs argue, defendants should now be judicially estopped from arguing against certification of the class for any reason other than manageability of the class.  (Id. at 4).

Plaintiffs' second argument for reconsideration is that plaintiffs' counsel did not treat the centerline presumption extensively enough in its earlier briefing, with the result that the court misunderstood the issue and that therefore the motion for class certification was wrongly decided.  Plaintiffs argue that this centerline presumption is common among the putative class members and not unique, and that therefore the named plaintiffs meet Rule 23(a)'s typicality requirement.  (Id. at 5).
///

5

A. <u>Judicial Estoppel</u>

The most recent Supreme Court opinion considering judicial estoppel is <u>New Hampshire v. Maine</u>, 532 U.S. 742 (2001). The state of New Hampshire in 1977 had argued before the Supreme Court that the boundary between New Hampshire and Maine was in the middle of the Piscataqua River's main channel of navigation. In a separate case two decades later, New Hampshire attempted to argue that the border ran along Maine's shore. <u>Id.</u> at 745. The Supreme Court found in its 2001 decision that New Hampshire was judicially estopped from making that argument. <u>Id.</u> "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." <u>Id.</u> at 749(citation omitted). Thus, even though the application of judicial estoppel is discretionary and there is no formula for determining when the doctrine should apply, "several factors typically inform the decision whether to apply the doctrine." <u>Id.</u> at 750. First, the party's later position must be "clearly inconsistent" with its earlier position. Second, whether the prior argument was successful is also a factor. A third factor is whether the party asserting inconsistent positions thereby would derive an unfair advantage over the opposing party. <u>Id.</u> at 750-51. Finally, "[a]dditional considerations may inform the doctrine's application in specific factual contexts." <u>Id.</u> at 751.

Plaintiffs rely on the Seventh Circuit case of <u>Carnegie

6

1 v. Household International, 376 F.3d 656 (2004), for the
2 proposition that "when a class action defendant supports
3 certification of a settlement class, it is judicially estopped
4 from later contesting that the requirements of certification have
5 been met – both in the original case and in any other related
6 litigation."  (Pls.' Mem. in Supp. of Mot. for Reconsideration at
7 6).  Because this language is not found in Carnegie, further
8 analysis is necessary.

9      Beginning in 1990, a number of class action suits were
10 brought against banks and tax preparers on the basis of what the
11 plaintiffs characterized as a scheme to defraud.  Carnegie, 376
12 F.3d at 659.  In 1999, the defendant banks and tax preparers
13 reached a settlement that purported to be global in nature.  The
14 defendants "urged the district court to accept the giant class as
15 appropriate for a global settlement."  Id.  Defendants argued
16 that the case of Buford v. H & R Block, Inc., 168 F.R.D. 340
17 (S.D. Ga. 1996), dealing with a similar if not identical class,
18 had been wrongly decided.[2]  Carnegie, 376 F.3d at 663.
19 Defendants' arguments succeeded at the district court level: the
20 court approved the settlement agreement.  Id. at 659.  However,
21 the Seventh Circuit reversed the lower court because of the
22 appellate court's concern that the settlement might have been the
23 product of collusion.  Id.

24      On remand to the district court, the court "certified
25 the same class that had been contemplated by the rejected

---

27    [2] The Buford court held that individual issues
28 predominated, and thus that a class action was not the superior method of adjudication.  See Fed. R. Civ. P. 23(b)(3).

7

settlement." Id.(emphasis added). The defendants filed an interlocutory appeal with the appellate court arguing against this certification. Id. at 658. Defendants attempted to argue that Buford, which held that the class of bank and tax preparer customers could not be certified under Rule 23(b)(3) because common issues did not predominate, had the effect of collaterally estopping the certification of a similar class in Carnegie. Id. at 663. The Seventh Circuit held that defendants could not make such inconsistent arguments. "They prevailed in the present litigation, until the settlement was finally rejected, by arguing that Buford was wrong. They are estopped to argue now that it was right." Id.

Carnegie does not control this case. First, this court is not bound by a Seventh Circuit decision. Second, the posture of this case is entirely different than it was in Carnegie. In Carnegie, the burden was on defendant to show the appellate court why the class was wrongly certified by the district court. 376 F.3d at 658. In this case, by contrast, the defendants need not make any arguments at all: as it stands, the class is not certified. See E.D. Cal. L.R. 78-230(k)(providing that the burden of proof on a motion to reconsider is with the moving party). Third, Carnegie involved defendants' inconsistent arguments regarding certification of the exact same class. Id. at 659. Here, by contrast, the class sought to be certified in Smith was nationwide and plaintiffs in this case purport to represent only a class of California land owners. Smith, 387 F.3d at 613; (May 2003 Order at 3).

The fourth reason Carnegie does not control this case

8

1 is that in the present case the defendants do not make
2 inconsistent arguments.  See New Hampshire, 532 U.S. at 750("[A]
3 party's later position must be 'clearly inconsistent' with its
4 earlier position.")(citation omitted).  Defendants never argued
5 before the Seventh Circuit that Dirk Regan, Carol Regan, and
6 Jacquelyn Sheldrick were typical of the class they purport to
7 represent.  Such an argument would have been nonsensical because
8 the Regans and Ms. Sheldrick were not the named parties in that
9 case.  Yet here defendants make exactly that argument – no matter
10 how worthy of certification the class may be in theory,
11 defendants argue that the Regans and Ms. Sheldrick are not
12 typical class members because the idiosyncracies in the title
13 history of named plaintiffs' parcels are unique to them.  The
14 Regans and Ms. Sheldrick may not even have standing to bring the
15 case on their own behalf, (see May 2003 Order at 5-6), and the
16 argument about this issue could potentially prejudice other class
17 members whose title histories are clearer.

18        Plaintiffs, on the other hand, would have the court
19 hold that, once a defendant agrees that a class is certifiable in
20 another district, that defendant is estopped from arguing that a
21 similar class with different named plaintiffs is not certifiable.
22 Thus, by plaintiffs' theory, the named plaintiffs in this case
23 could be any plaintiffs that would have been included in the
24 Seventh Circuit nationwide class, no matter how atypical those
25 named plaintiffs are in comparison to the class of landowners

9

sought to be certified in this case.  That cannot be the law.[3]
This case is not one where judicial estoppel is appropriate.[4]

B. <u>The Center Line Presumption</u>

Plaintiffs' second argument is that the "centerline presumption" at issue with regard to the named plaintiffs is an issue common to all members. (Pl.'s Mem. in Supp. of Mot. for Reconsideration at 5). The "centerline presumption" is codified in California Civil Code §§ 831[5] and 1112.[6]  The presumption is relevant in this case because there exists a 1947 grant deed conveying to plaintiffs' predecessors-in-interest the land abutting the easement. (<u>See</u> May 2003 Order at 5)(quoting language of the deed, which purported to except from the grant

---

[3] By contrast, the district court in <u>Carnegie</u> that certified the class found that the named plaintiffs did meet Rule 23's typicality requirement, a holding which the Seventh Circuit did not disturb.  376 F.3d at 662.

[4] Another reason the application of judicial estoppel is inappropriate in this instance is that, if the court were to do so, the court would technically be estopping defendants but in reality would be hurting the chances for other class members to recover on their claims.  <u>See</u> <u>Hanon</u>, 976 F.2d at 508("The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."); <u>id.</u>("[C]lass certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it")(quotation marks and citation omitted).

[5] An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown.

Cal. Civ. Code § 831.

[6] A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant.

Cal. Civ. Code § 1112.

10

"that portion which lies within the 400 foot easement of the Central Pacific Railway Company . . .").

Plaintiffs have not shown what new facts or circumstances now exist that did not exist when the original order denying class certification issued in May 2003.  See E.D. Cal. L.R. 78-230(k)(providing that, in an application for reconsideration, "it shall be the duty of counsel to present to the Judge . . . what new or different facts or circumstances are claimed to exist, or what other grounds exist for the motion").  The contents of the 1947 grant deed have not changed, nor has the nature of the class plaintiffs seek to have certified.  The court in its May 2003 Order held that

> [w]hether defendant's construction of the December 4, 1947 grant deed is correct need not be determined at this time. The court is persuaded that defendants have set forth a standing defense against plaintiffs that is at least arguable, and that this defense, arising out of an idiosyncracy in the title history of plaintiffs' parcels, is unique to plaintiffs.  Most likely, there are thousands of putative class members whose trespass claims are not similarly encumbered, and the interest of those members would not be well-served by class representatives preoccupied with litigating that defense.  Plaintiffs, for their part, have presented no arguments as to why defendants' proferred defense is not at least arguable, or why that defense would not threaten to become a focus of the litigation to the detriment of absent class members.

(May 2003 Order at 5-6).  After considering plaintiffs' and defendants' lengthy dissertations on the history and application of the centerline presumption, the court is convinced more than ever that this issue, and its effect on plaintiffs' standing to bring this case, will be a significant, if not the primary, issue in this case.  Plaintiffs have produced no new evidence showing that the majority, or even a significant minority, of the members of the class they seek to have certified face similar standing

11

problems.

Plaintiffs attempt to argue in the present motion that the law on the centerline presumption is crystal clear, and that therefore the named plaintiffs have clear title to the land on which the easement lies. This is a classic case of litigants attempting a second bite of the apple. Defendants made clear in their initial opposition to the motion for class certification two years ago that they were putting plaintiffs' standing in issue. (See Defs.' Opp'n to Mot. for Class Certification at 28-37)(discussing title history of plaintiffs). Plaintiffs now argue that their "previous treatment of these issues obviously did not adequately address the concerns that led to the Court's decision to deny the Motion for Class Certification," (Pls.' Mem. in Supp. of Mot. for Reconsideration at 5), and then proceed to attempt to adequately address those concerns on this motion to reconsider. The fact that plaintiffs' attorneys think that they did not handle this issue adequately in their first attempt does not provide grounds for reconsideration of the issue.[7]

C. Plaintiffs' Case Management Plan

Plaintiffs argue that "the centerline presumption is relevant to virtually every claimant, and under California law,

---

[7] In addition, the "law of the case" doctrine supports today's decision to continue not to certify the class. That doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988)(citation omitted). "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." Id.(quotation marks and citation omitted).

12

the presumption must be adopted class-wide.  This is a simple summary judgment issue." (Pls.' Mem. in Supp. of Mot. for Reconsideration at 17).  Plaintiffs would have the court somehow dispose of the issue of the differing language of all class members' deed histories by ruling that all plaintiffs in the class own the relevant land.  While the plaintiffs are correct in arguing that the law must be applied consistently to each class member, it is not individualized differences in the law with which the court is concerned but individualized differences in the title histories, and particularly the effect of the named plaintiffs' title histories on their ability to represent the class.

Plaintiffs also argues that its case management plan calls for the court to certify the class, provide a forum for common issues to be litigated, and <u>then</u> have individual trials to determine whether individual class members actually owned the land.  Plaintiffs cite <u>In re U.S. Financial Securities Litigation</u> for the proposition that the accepted view in the Ninth Circuit is that trial on all common elements followed by individual trials on individualized issues is the solution where common issues do not predominate.  (Pls.' Mem. in Supp. of Mot. for Reconsideration at 18); <u>see</u> 69 F.R.D. 24 (S.D. Cal. 1975).  There are at least two problems with this argument.  First, the court in its order of May 2003 did not reach the question of whether common issues predominated over individualized issues.  The court held that named plaintiffs were not typical of the class. Second, the individualized issue in <u>U.S. Financial</u> was plaintiff class members' reliance on an alleged misrepresentation in a Rule

13

1  10b-5 securities suit.  <u>U.S. Financial</u>, 69 F.R.D. at 39-40.  By
2  contrast, standing is a more fundamental requirement for bringing
3  a suit in the first place.  See <u>Lujan v. Defenders of Wildlife</u>,
4  504 U.S. 555, 560 (1992)(Article III of the Constitution imposes
5  an "irreducible constitutional minimum" of standing on all cases
6  brought in federal court).  Therefore, the court will not permit
7  standing to be determined after other issues are adjudicated.

   D. <u>Leave to Amend</u>

At oral argument, plaintiffs contended that defendants' strategy is to oppose <u>any</u> named plaintiffs on the basis that those plaintiffs are not typical, and that therefore defendants are in reality arguing that common issues do not predominate. Plaintiffs will be able to test that theory, as the court today grants plaintiffs leave to amend the complaint to substitute new named plaintiffs.

IT IS THEREFORE ORDERED that:

(1) plaintiffs' motion for reconsideration of the court's order denying certification of the class with the current named plaintiffs be, and the same hereby is, DENIED;

(2) within 30 days from the date of this order, plaintiffs may amend their complaint to substitute new named plaintiffs.  If new plaintiffs are substituted, plaintiffs may again move the court for class certification.

DATED: June 17, 2005

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE