UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DIRK REGAN, CAROL REGAN, JACQUELYN SHELDRICK, STEPHEN PHILLIP RUTHERFORD, DONALD M. FISK, AND GLENN L. BOOM, for themselves and behalf of all others similarly situated, et al., <br><br>Plaintiffs,<br><br>v.<br><br>QWEST COMMUNICATIONS INTERNATIONAL, INC., et al.,<br><br>Defendants.<br>_____/ | NO. CIV. 2:01-766 WBS KJM<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>MOTION FOR CLASS CERTIFICATION</u> |

----oo0oo----

Named plaintiffs Glenn Boom and Stephen Phillip Rutherford bring this putative class action against defendants Qwest Communications International, Inc., Qwest Communications Corporation, Qwest Transmission Inc., Qwest USLD Communications Corporation, and Qwest Network Construction Services

1

1  (collectively, "Qwest").  Before the court is plaintiffs' motion
2  for class certification.
3  I.   Factual and Procedural Background
4          The facts of this action have already been recounted by
5  this court in its previous orders, and do not all bear repeating
6  here.  See Regan v. Williams Commc'ns Int'l, Inc., Nos. 01-779,
7  01-766, slip op. (E.D. Cal. June 17, 2005) (Order denying motion
8  to reconsider); Regan v. Williams Commc'ns Int'l, Inc., Nos. 01-
9  779, 01-766, slip op. (E.D. Cal. May 16, 2003) (Order denying
10 motion for class certification).  Glen Boom owns, in trust with
11 his wife Sally Streeter Boom ("the Booms"), a 10.77 acre parcel
12 of land in fee simple in Yuba County, California that is
13 encumbered by a Union Pacific Railroad right-of-way.  (Mot. for
14 Class Cert (Docket No. 179) at 3-4.)  Union Pacific Railroad's
15 predecessor-in-title, Yuba County Rail, obtained the encumbrance
16 pursuant to an 1877 condemnation order granting it an easement
17 for railroad purposes.  (Id. at 4.)  Stephen Phillip Rutherford
18 owns, in trust with his wife Maxine Rutherford and two children,
19 approximately 3,000 acres of land in Imperial County, California.
20 Two parcels of the Rutherford's property consisting of 12.86 and
21 45.35 acres located in Imperial County are crossed by Union
22 Pacific Railroad's right of way.  (Id. at 4.)  Union Pacific
23 Railroad's predecessor-in-title, Southern Pacific Company,
24 purchased by deed a right-of-way easement in 1907 for railroad
25 purposes.  (Id.)
26         In short, plaintiffs allege that defendants trespassed
27 on their lands and installed fiber optic telecommunications
28 cables along railroad rights-of-way without their consent.  (See

2

Second Am. Class Action Compl. ("SAC") (Docket No. 136).) Plaintiffs contend that the rights-of-way granted to the railroad companies are easements for railroad purposes only and that defendants could not obtain occupancy rights in the right-of-way land without plaintiffs' consent. Plaintiffs seek declaratory relief and damages for trespass and unjust enrichment.

The court previously denied plaintiffs' motion for class certification on the ground that the then-putative class representatives did not satisfy the "typicality" requirement of Federal Rule of Civil Procedure 23(a). Regan v. Williams Commc'ns Int'l, Inc., Nos. 01-779, 01-766, slip op. (E.D. Cal. May 16, 2003). In that Order, the court found that defendants had presented a standing defense against class representatives Dirk and Carol Regan and Victor and Jacquelyn Sheldrick unique to them that could threaten to become a focus of the litigation to the detriment of the class members. Id. at 5-6. Specifically, defendants argued that plaintiffs did not hold any interest in the right-of-way land on which defendants laid their fiber optic cables because that strip of land was excepted from the property conveyed to plaintiffs' predecessors-in-interest. Id. at 5. Plaintiffs thereafter filed a motion for reconsideration, arguing in part that the "centerline presumption"--the presumption that an owner of land bounded by a road or street is presumed to own the center of the way--is a common issue that governs all deeds in California and that the language defendants challenged in the named plaintiffs' deeds was typical of class members. (Docket No. 124); see Cal. Civil Code §§ 831, 1112 (codifying the centerline presumption).

3

1        In denying plaintiffs' motion for reconsideration, the
2   court expressed doubts about plaintiffs' case management plan,
3   which would have had the court certify the class, provide a forum
4   in which common issues could be litigated, and <u>then</u> hold
5   individual trials to determine whether individual class members
6   actually owned the right-of-way land.  <u>Regan v. Williams Commc'ns</u>
7   <u>Int'l, Inc.</u>, Nos. 01-779, 01-766, slip op. at 13 (E.D. Cal. June
8   17, 2005).  The court was concerned that plaintiffs wanted the
9   court to apply the centerline presumption class-wide on a motion
10  for summary judgment after class certification and "somehow
11  dispose of the issue of the differing language of all class
12  members' deed histories by ruling that all plaintiffs in the
13  class own the relevant land."  <u>Id.</u> at 12-13 (rejecting
14  plaintiffs' reliance on <u>In re U.S. Financial Securities</u>
15  <u>Litigation</u>, 69 F.R.D. 24 (S.D. Cal. 1975) as inapposite).  The
16  court made clear that "standing is a [] fundamental requirement
17  for bringing suit" such that "the court will not permit standing
18  to be determined after other issues are adjudicated."  <u>Id.</u> at 14.
19       Plaintiffs amended their Complaint on August 15, 2005
20  to add Boom and Rutherford as putative class representatives.
21  (<u>See</u> SAC).  Plaintiffs again seek certification of the class.
22  Plaintiffs define the class as "all owners of land in California
23  that underlies or is adjacent to a railroad right-of-way within
24  which Qwest owns, operates, or uses fiber optic cable
25  ("Landowners")."  (SAC ¶ 18.)
26  II.  <u>Discussion</u>
27       A class action will be certified only if it meets the
28  four prerequisites identified in Federal Rule of Civil Procedure

4

23(a) and additionally fits within one of the three subdivisions of Rule 23(b). Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Montgomery v. Rumsfeld, 572 F.2d 250, 255 (9th Cir. 1978), the court must conduct a rigorous inquiry before certifying a class. Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982); E. Tex. Motor Freight Sys. v. Rodriquez, 431 U.S. 395, 403-05 (1977).

### A. Class Definition

Implicit in Rule 23 is the requirement that the class must be adequately defined and clearly ascertainable. DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970); see also Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718 (9th Cir. 2007). "The requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." Aiken v. Obledo, 442 F. Supp. 628, at 658 (E.D. Cal. 1977). A class definition must be "precise, objective, and presently ascertainable." O'Connor v. Boeing North Am., Inc., 197 F.R.D. 404, 416 (C.D. Cal. 2000) (quotation marks omitted). "An adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.'" Campbell v. PricewaterhouseCoopers, LLP, 253 F.R.D. 586, 593 (E.D. Cal. 2008) (quoting Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978)).

Plaintiffs' class definition consists of a defined

1  group of individuals--those who own land in California subject to
2  or adjacent to a railroad right-of-way under which Qwest owns,
3  operates, or uses fiber optic cables.  Class members can be
4  determined by reference to maps detailing railroad tracks and
5  property boundaries, defendants' records regarding the location
6  of Qwest's fiber optic cables, and class members' deeds to land.
7  While an individualized evaluation of a potential class member's
8  deed would be required, this does not preclude the class
9  definition from being ascertainable.  See Mazur v. Ebay, Inc.,
10 257 F.R.D. 563, 566 (N.D. Cal. 2009) ("[T]he class need not be so
11 ascertainable that every potential member can be identified at
12 the commencement of the action.")  Plaintiffs have provided a
13 precise, objective, and ascertainable class definition.

14         Defendants argue that plaintiff's class definition is
15 defective because the trespass alleged is a permanent trespass
16 rather than a continuing trespass.  According to defendants, it
17 follows that only those property owners who owned the property at
18 the time the trespass originally occurred have standing to sue
19 for trespass and plaintiff's definition of current property
20 owners is therefore inappropriate.  The Supreme Court has
21 counseled that there is "nothing in either the language or
22 history of Rule 23 that gives a court any authority to conduct a
23 preliminary inquiry into the merits of a suit in order to
24 determine whether it may be maintained as a class action."  Eisen
25 v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974); see United
26 Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. &
27 Servs. Workers Int'l Union v. ConocoPhillips Co., 593 F.3d 802,
28 809 (9th Cir. 2010) ("[A] court can never be assured that a

plaintiff will prevail on a given legal theory prior to a dispositive ruling on the merits, and a full inquiry into the merits of a putative class's legal claims is precisely what both the Supreme Court and we have cautioned is not appropriate for a Rule 23 certification inquiry.") (citing <u>Eisen</u>).  Defendants ask the court to do precisely what is prohibited on a Rule 23 certification motion and rule that plaintiffs' legal theory regarding the nature of the trespass is wrong.[1]

   B.   <u>Rule 23(a)</u>

      Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively.  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).  Defendants do not challenge numerosity, and it is satisfied as the class consists of thousands of putative plaintiffs.  Nor do defendants challenge commonality, apparently on the belief that there is at least one common question of law or fact that could apply to the class as a

---

[1] As Boom and Rutherford have owned their property since before defendants installed fiber optic cables underneath the adjacent railroad rights-of-way, defendants' argument is also irrelevant to any Rule 23(a) standing challenge.

7

whole.[2]

Defendants again, however, challenge the typicality of the putative class representatives. Rule 23(a) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that named plaintiffs have claims "reasonably coextensive with those of absent class members," but their claims do not have to be "substantially identical." Hanlon, 150 F.3d at 1020. The test for typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Class certification is inappropriate "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Hanon, 976 F.2d at 508 (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), cert. denied, 498 U.S. 1025 (1991)).

Plaintiffs allege that defendants acted toward the putative class representatives in the same way they acted toward the putative class: the trespass injuries allegedly suffered by Boom and Rutherford are the same injuries allegedly suffered by

---

[2] As explained in the context of Rule 23(b)(3) certification infra, the court is skeptical that there are any issues of fact or law common to the class as a whole such that plaintiffs could satisfy the "commonality" requirement of Rule 23(a).

the putative class, defendants' conduct toward Boom and Rutherford in laying fiber optic cable along their alleged right-of-way is not unique to them, and other members of the putative class have allegedly been injured by the same conduct.  Indeed, plaintiffs intend to file motions for partial summary judgment to decide on a class-wide basis the scope of railroad easements and ownership of the right-of-way land.  Under plaintiffs' case management plan, motions for partial summary judgment are the primary way plaintiffs seek to establish defendants' liability for trespass and unjust enrichment.

However, plaintiffs lose sight of the fact that the class's claims are inextricably tied to the instruments that conveyed the rights-of-way and cannot be decided in a vacuum. Right-of-way land has been conveyed by--at a minimum--five federal land grant statutes, five condemnation statutes, and thousands of private conveyances.  The class's trespass claims therefore depend on how the court construes the applicable statutes, conveyances, and deeds.  Approximately ninety percent of the class owns land where the right-of-way was conveyed by a federal land statute.  The rights-of-way in Boom's and Rutherford's cases were conveyed by condemnation and private deed, respectively.  While Boom's deed could be typical of those putative plaintiffs whose rights-of-way were conveyed by condemnation statutes, plaintiffs have provided no evidence to support this inference.  Furthermore, there is no class representative whose right-of-way was conveyed by one of the five federal land grant statutes that affects ninety percent of the putative class.  Boom's and Rutherford's claims, therefore, are

9

not "typical" of the class, and class certification must be denied for that reason.

Even if Boom's and Rutherford's claims could be considered typical of the class, defendants also raise the possibility of unique defenses against Boom and Rutherford that could become the focus of the litigation. While defendants do not raise any specific challenge to Boom's or Rutherford's ownership of the right-of-way land at this juncture as they did to the Regans and Sheldricks on plaintiffs' prior motion for class certification, they argue that a unique "standing problem" which Boom and Rutherford face is the ability to prove that they own the land in fee subject to a railroad right-of-way easement such that they are proper plaintiffs. The 1866 condemnation decree--and its corresponding condemnation statute--and 1909 private deed that conveyed the rights-of-way in Boom's and Rutherford's cases, respectively, are admittedly not common to the overwhelming majority of putative plaintiffs, appear to be significantly or almost entirely illegible,[3] and, in Rutherford's case, is argued to be highly idiosyncratic. Because there are likely so many issues to be adjudicated that any one issue is unlikely to become the "focus" of the litigation, the class would undoubtedly suffer harm if Boom and Rutherford become preoccupied with these standing challenges. See Hanon, 976 F.2d at 508.

C.   Rule 23(b)

Even assuming plaintiffs met the requirements of Rule 23(a), their motion for class certification must be denied

---

[3] See (Aff. of Dan Millea ("Millea Aff.") (Docket No. 180) Ex. 4, 7.)

10

because they fail to meet the requirements of Rule 23(b).  An action that meets all the prerequisites of Rule 23(a) may be maintained as a class action only if it also meets the requirements of one of the three subdivisions of Rule 23(b).  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163 (1974).  In this case, plaintiff seeks certification under both Rule 23(b)(2) and 23(b)(3).

        1.   23(b)(2) Certification

A class action may be maintained under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  To the extent that Rule 23(b)(2) certification is available where plaintiffs seek monetary damages, it is only available where "the primary relief sought is declaratory or injunctive."  Zinser v. Accufix Res. Institute, Inc., 253 F.3d 1180, 1195 (9th Cir. 2001).

To determine the whether the primary relief sought is declaratory or injunctive or whether monetary damages are the predominant form of relief sought, court should consider "[f]actors such as whether the monetary relief sought determines the key procedures that will be used, whether it introduces new and significant legal and factual issues, whether it requires individualized hearings, and whether its size and nature--as measured by recovery per class member--raise particular due process and manageability concerns."  Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010).

1         Plaintiffs do not seek to have the fiber optic cables
2    removed from their property; rather, they seek only declarations
3    that the railroad rights-of-way provided only easements and that
4    defendants had no right to install fiber optic cables on their
5    property.  Yet even plaintiffs concede that they cannot obtain
6    the declaratory relief that they seek with respect to every
7    putative class member.  Many putative plaintiffs likely do not
8    own the railroad right-of-way adjoining their property, as
9    railroads have obtained title to some rights-of-way over time
10   through private deed, adverse possession, or possibly land grant
11   or condemnation statutes, and as predecessors-in-title have
12   withheld the rights-of-way from conveyances.  The declaratory
13   relief that plaintiffs seek, therefore, will necessarily be
14   individualized and cannot apply to "the class as a whole."
15        Furthermore, according to plaintiffs' case management
16   plan, the court would decide "common" questions of law with
17   respect to the entire class on motions for partial summary
18   judgment, then hold a jury trial on damages, and thereafter
19   undergo a claims administration process whereby individual class
20   members would come forward to establish their eligibility for
21   class benefits.  While the court will not speculate as to what
22   the proper measure of damages might be, plaintiffs' request for
23   damages would necessitate a ruling on whether a common measure or
24   an individualized determination of damages would be appropriate,
25   raising new legal issues and the possibility of even more
26   individualized hearings.  Even according to plaintiffs the
27   introduction of class-wide damages creates the necessity for
28   individualized hearings in the form of a "claims administration"

stage such that individual class members can collect.  The court must conclude that under any procedure the issues pertaining to monetary damages would predominate the proceedings.  Accordingly, certification under Rule 23(b)(2) would be inappropriate.

### 2. 23(b)(3) Certification

A class action may be maintained under Rule 23(b)(3) if (1) "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623 (1997) ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").  Almost every one of plaintiffs' supposed "common questions of fact" are predicated on the legal conclusions that plaintiffs own the right-of-way land, that the railroad only had an easement in the right-of-way, and that defendants' actions were outside the scope of those easements. (See SAC ¶ 22.)  These legal issues must, therefore, be decided in plaintiffs' favor for plaintiffs' "common questions of fact" to be potentially valid and relevant to the case.  Whether these legal issues are "common" or individualized, therefore, will determine whether common issues predominate over individual issues as a whole in this litigation.

Plaintiffs portray these legal issues as common questions of law properly subject to successive motions for summary judgment that would apply to whole swaths of putative

13

class members.  Yet it is clear that these issues are not "common" to the class at all.  The "question" of the scope of railroad interests in right-of-way land itself, for example, involves a minimum of ten land grant and condemnation statutes.  The court would have to construe all of the statutes--each of which affects only a small minority of the class--to determine the fee versus easement issue and, in cases where the statute provided for a railroad easement, examine the individual conveying documents to determine the scope of any easement granted.  Determining the railroad interest in right-of-way land conveyed by land grant or condemnation statutes, therefore, is not a single "common" question of law applicable to the class as a whole.  Rather, it is a fractured and individualized inquiry that cannot sustain a finding of "predominance" necessary to satisfy Rule 23(b)(3) certification.

With regard to the miles of right-of-way subject to private conveyances, plaintiffs argue the individual deeds can be placed in groups based on common conveyance language and the court can decide motions for partial summary judgment with respect to each group on the fee versus easement issue.  While plaintiffs have submitted a handful of such conveyances from the same railroad route in Kings County, California in order to show that these conveyances can use identical or similar language, (Ex. to Supp. Millea Aff. (Docket No. 193) Ex. B), the court has no evidence that there is a limited range of granting language or that there will be a limited number of potential deed "groups."  See Kirkman v. N.C. R. Co., 220 F.R.D. 40 (M.D.N.C. 2004).  When the private conveyances number somewhere between five hundred and

14

two thousand, spanning hundreds of miles and multiple railroad routes, plaintiffs' offering is no assurance that interpretation of private deeds is a "common" issue at all.

Yet this is at most only half of the equation. A class member can only bring a cause of action for trespass--and the corresponding claims for unjust enrichment and declaratory judgment--if he shows that he owns the land allegedly trespassed upon. This inquiry is necessarily an individual one that also implicates the plaintiff's standing to bring suit. The court previously warned plaintiffs that it would not allow standing to be determined after other issues had been decided. Regan v. Williams Commc'ns Int'l, Inc., Nos. 01-779, 01-766, slip op. at 13 (E.D. Cal. June 17, 2005). Yet plaintiffs again argue--and their case management plan so proposes--that the court can rule on a motion for partial summary judgment regarding the "centerline presumption" and in effect decide that each plaintiff owns the land in question without looking at a single title. It is only in the "claims administration stage" at the conclusion of the litigation that plaintiffs propose the magistrate judge investigate whether there are any "defenses" to liability--that is, whether a particular plaintiff owns the land.

Standing to bring suit is not a "defense" to liability fit to be determined after every other issue in the case has been litigated. Rather, it is an "essential and unchanging part of the case-or-controversy requirement of Article III" without which a federal court lacks subject matter jurisdiction to hear a case. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-560 (1992); see Fed. R. Civ. P. 12(b)(1). While plaintiffs point out that to

15

require an individualized determination of standing before moving on to common questions of law effectively defeats class certification, the court believes that this only illustrates why it this suit is not appropriate for class action certification nor superior to other methods for adjudicating plaintiffs' claims.

When properly addressed at the beginning of the litigation, it is clear that the exercise of examining each putative plaintiff's deed and documents in chain of title to determine that they own the right-of-way land would overwhelm the proceedings. While <u>Koyle v. Leval 3 Communications, Inc.</u>, No. 01-286 slip op. (D. Idaho Dec. 1, 2005), is the only federal fiber optic right-of-way case either party has proffered as having decided the issue of class certification in the Ninth Circuit,[4] the court finds its opinion granting class certification distinguishable for several reasons. (Millea Aff. Ex. 21.) In that case almost all of the right-of-way land was obtained under one federal land grant statute and the amount of right-of-way land was only a fraction of the land at issue here. <u>Koyle</u>, No. 01-286, slip. op. at 6. Even in <u>Koyle</u>, the court

---

[4] Plaintiffs have additionally provided the court with four "rails to trails" cases that granted certification of class actions where property owners argued the government abandoned its railroad easement and that subsequent conversion of the railroad into a park constituted an unconstitutional "taking," <u>see, e.g.</u>, <u>Hash v. United States</u>, No. 99-324, 2000 U.S. Dist. LEXIS 20061 (D. Idaho July 7, 2000) (one federal statute applied to approximately 200 class members along one railroad line spanning two counties), and one case from the Eastern District of Virginia certifying a two-state fiber optic right-of-way class. <u>Fisher v. Va. Elec. & Power Co.</u>, 217 F.R.D. 201 (E.D. Va. 2003). Defendants provide a list of twenty-one federal cases that have denied class certification of these types of cases. (Opp'n to Mot. for Class Cert. (Docket No. 191) at 10-11.)

16

found that, after weighing the common and individual issues, predominance "was not an easy call" and only conditionally certified the class pursuant to Rule 23(c).  This case, on the other hand, will be significantly more complex than as was the case in Koyle.  At issue are at least ten statutes and admittedly thousands of private grants, across over one thousand miles of land spanning over thirty counties and involving approximately fifteen thousand putative class members.  Given the inherently individual issues relating to plaintiffs' titles and the many types and forms of conveyances, it seems clear to the court that individual issues can only predominate over what common questions of law that might exist.

      IT IS THEREFORE ORDERED that plaintiff's motion for class certification be, and the same hereby is, DENIED.

DATED:   October 5, 2010

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE